## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | § | | |
| | § | | |
| v. | § | CRIMINAL NOS. | 4:23-CR-183 & |
| | § | | 4:25-CR-139 |
| DANIEL LEE HICKS | § | | |
| Defendant. | § | | |

### PLEA AGREEMENT

The United States of America, by and through Nicholas J. Ganjei, United States Attorney for the Southern District of Texas, and Luis Batarse, Assistant United States Attorney, and the defendant, Daniel Lee Hicks ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.  Defendant agrees to plead guilty to Counts One and Three of the indictment in cause number 4:23-cr-183, and Count One of the indictment in cause number 4:25-cr-139. Under cause number 4:23-cr-183, Count One charges Defendant with Sexual Exploitation of Children, in violation of Title 18, United States Code, Section 2251(a) & (e), and Count Three charges Defendant with Coercion and Enticement, in violation of Title 18, United States Code, Section 2422(b). Under cause number 4:25-cr-139, Count One charges Defendant with Sexual Exploitation of Children, in violation of Title 18, United States Code, Section 2251(a) & (e). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment/information, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2.  The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 2251(a) & (e), is imprisonment of not less than 15 years and up to 30 years, and a fine of not more than $250,000. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 2422(b) is imprisonment of not less than 10 years and up to life in prison, and a fine of not more than $250,000. With a conviction for Counts One and Three under cause number 4:22-cr-622, and Count one under cause number 4:25-cr-139, there is mandatory restitution under Title 18, United States Code, Section 2259 which is not less than $3,000.00 per victim. Additionally, under Counts One and Three in cause number 4:22-cr-622, and Count one under cause number 4:25-cr-139, Defendant may receive a term of supervised release after imprisonment of at least 5 years to life. *See* Title 18, United States Code, sections Section 3583(k). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(k). Defendant understands that the sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.  Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by

cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

4. Pursuant to Title 18, United States Code, Section 3014(a)(3), if the court determines that the Defendant is a non-indigent person, the Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of five thousand dollars ($5000.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District clerk's Office, P.O. Box 61010, Houston, TX 77208, Attention: Finance.

5. Pursuant to Title 18, United States Code, Section 2259A, in addition to any other criminal penalty, restitution, or special assessment authorized by law, the Court shall assess no more than

(1)    $17,000.00 if the Defendant is convicted of 18 U.S.C. §2252(a)(4) or §2252A(a)(5);

(2)    $35,000.00 if the Defendant is convicted of any other trafficking in child pornography offenses as defined by §2259(c)(3), which includes offenses under 18 U.S.C. §§2251 (d), 2252(a)(1) through (3), 2252A(a)(1) through (4), 2252A(g) (in cases in which the series of felony violations exclusively involves violations of sections 2251(d), 2252, 2252A(a)(1) through (5), or 2260(b)), or 2260(b);

(3)    $50,000.00 if the Defendant is convicted of child pornography production as defined by 18 U.S.C. §2259(c)(1), which includes offenses under 18 U.S.C. §2251(a) through (c), 2251A, 2252A(g) (in cases in which the series

3

of felony violations involves at least 1 of the violations listed in this subsection), 2260(a) or any offense under chapter 109A or chapter 117 that involved the production of child pornography.

The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District clerk's Office, P.O. Box 61010, Houston, TX 77208, Attention: Finance.

### Immigration Consequences

6. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

### Waiver of Appeal, Collateral Review, and Statute of Limitations

7. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or

4

"collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are

"effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

### The United States' Agreements

12. The United States agrees to each of the following:

(a)     If Defendant pleads guilty to Counts One and Three under cause number 4:23-cr-183, and Count One under cause number 4:25-cr-139, and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law;

(b)     If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas Only

13. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

14. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)    to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)    to set forth or dispute sentencing factors or facts material to sentencing;

(c)    to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)    to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)    to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

15. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences

7

imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

16. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a)     If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

> (b)     At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

> (c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he/she could testify on his own behalf.

## Factual Basis for Guilty Plea

17. Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts One and Three of the indictment in cause number 4:23-cr-183, and Count One of the indictment in cause number 4:25-cr-139. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

On November 2, 2022, HSI SA Laura Gill learned from HSI SA Scott Labor that there was

8

a minor female victim of online sexual exploitation by Vermont native Daniel HICKS residing in

Houston, Texas, located within the Southern District of Texas.

On June 12, 2021, NCMEC received CyberTipline Report 92806006 from Facebook. On

November 4,2021, Vermont State Police Det. Raymond received CyberTipline Report 92806006

from NCMEC. Facebook reported the following information in this cyber tip:

- Incident Type: Child Pornography (possession, manufacture, and distribution)
- Incident Time: 06-04-2021 00:11:38 UTC

Facebook reported the incident occurred in Daniel HICKS's Facebook Messenger chat.

Facebook provided identifiers for a suspected minor female victim (hereinafter MV-1):

- ESP Group Identifier: possible involvement in online group related to CSE:297759761778064
- Additional Information: Estimated location on June 12, 2021 UTC: [city near Houston], Texas, US

Facebook reported the Recipient of the child pornography as:

- o Name: Daniel Hicks
- o Date of Birth: -1996
- o Approximate Age: 24
- o Email Address: xxxx.danhicks@gmail.com (Verified)
- o Screen/User Name: daniel.hicks.xxxxxx
- o ESP User ID: 100065621888075
- o Profile URL: http://www.facebook.com/daniel.hicks.xxxxxxx
- o IP Address: 64.223.122.139 (Login) 06-09-2021 16:34:28 UTC
- o ESP Group Identifier – possible involvement in online group related to CSE [Child Sexual Exploitation]: 297759761778064
- o Additional Information: Estimated location on June 12, 2021 UTC: Vermont, US (Not Verified)

Facebook provided two files that were uploaded by the suspect user. Facebook provided the

following file names:

- \*\*\*\*\*_n.jpg. Facebook advised this file was publicly available and was the profile picture for MVF-1.
- \*\*\*\*\*_o.jpg. Facebook reported this file was not viewed by the ESP and did not advise if

the contents of this file were publicly available. This file was sent via Messenger to Daniel Hicks on June 4, 2021 at 00:11:38 UTC.

Cybertipline Report 92806006 was sent to the Houston ICAC by NCMEC in July 2021 based on the reported information. It was forwarded to the Vermont ICAC when it was found to relate to an ongoing investigation related to CyberTipline Report 92806182. On November 9, 2021, Det. Raymond obtained a search warrant to search the following file provided by Facebook with CyberTipline Report 92806006. Det. Raymond received and viewed the file and observed it depicted what appeared to be a close-up of a prepubescent vagina.

On June 12, 2021, NCMEC received CyberTipline Report 92806182 from Facebook. CyberTipline Report 92806182 reported the following information:

The suspect is listed as:
- Name: Daniel Hicks
- Date of Birth: 1996
- Approximate Age: 24
- Email Address: xxxx.danhicks@gmail.com (Verified)
- Screen/User Name: daniel.hicks.xxxxxxx
- ESP User ID: 100065621888075
- Profile URL: http://www.facebook.com/daniel.hicks.5876060
- IP Address: 64.223.122.139 (Login) 06-09-2021 16:34:28 UTC

MV-1's (from CyberTipline Report 92806006) subscriber information included screen/user name, alleged date of birth, email address, ESP User Id, profile URL, IP address, and estimated location on June 12, 2021 UTC: [city near Houston], Texas, US. Facebook advised that activity on the platform indicated that the user MVF-1 was a minor, despite their listed age being an adult, along with their standard disclaimer. Facebook provided excerpts of conversations between HICKS and MVF-1 from May 8, 2021, at 19:06:03 UTC through June 4, 2021, at 00:11:06 UTC:

**HICKS** - May 8, 2021 at 19:06:03 UTC: Probably yell and cuss u out and block

10

u....idk i was there ID basically rape u hard and multiple times so i could get sex from u and then live u in the woods or something [...]

**HICKS** - May 8, 2021 at 19:06:13 UTC: But that's how ID punish u

*MV-1* - May 8, 2021 at 19:06:29 UTC: Okay

**HICKS** - May 8, 2021 at 19:06:41 UTC: Ya

*MV-1* - May 8, 2021 at 19:07:17 UTC: Mhm

**HICKS** - May 8, 2021 at 19:08:07 UTC: Ya I mean other than that ID kill u but rape would hurt u enough tho so dont ever ever lie to me unless u had to BC of a surprise or Something [...]

**HICKS** - May 9, 2021 at 06:42:51 UTC: When did u turn 13 tho?

*MV-1* - May 9, 2021 at 06:43:05 UTC: Agust 14 [...]

*MV-1* - May 28, 2021 at 23:25:35 UTC: Then spank me

**HICKS** - May 28, 2021 at 23:25:46 UTC: Haha I would if u were here

*MV-1* - May 28, 2021 at 23:26:14 UTC: Yeah sure you would

**HICKS** - May 28, 2021 at 23:26:44 UTC: I would but itd probably turn me on if i did so then ID have to fuck u after lol [...]

**HICKS** - June 4, 2021 at 00:11:06 UTC: Ok well can I see that amazing pussy of yours baby?

On November 19, 2021, Det. Raymond served Facebook with a State of Vermont search warrant for the Facebook Account of HICKS. On January 3, 2023, SA Gill reviewed the search warrant return for Facebook user Daniel HICKS and observed that the account was registered on April 1, 2021, at 01:53:19 UTC with the email address of xxxx.danhicks@gmail.com and IP address 64.223.109.87.

The IP address on June 9, 2021, at 16:34:28 UTC, was 64.223.122.139. The account was disabled on July 13, 2021, at 03:56:57 UTC. The following Facebook Messenger conversation

excerpts between HICKS and MV-1 dated May 6, 2021, at 1:20:54 UTC through May 6, 2021, at 03:28:48 UTC along with numerous images/videos of MVF-1 (to include CSAM) appear in the HICKS Facebook account:

>  **MV-1** May 6, 2021, 01:23:00 UTC: I am so tired of trying and living life

> **HICKS** *May 6, 2021, 01:26:18 UTC:* Same

>  **MV-1** May 6, 2021, 01:28:15 UTC: Yeah

> **HICKS** *May 6, 2021, 01:30:59 UTC:* Ya u ?

> **HICKS** *May 6, 2021, 01:36:44 UTC:* Ok doesn't answer my question but ok

>  **MV-1** May 6, 2021, 01:37:23 UTC: Yes I am but I am busy

> **HICKS** *May 6, 2021, 01:38:34 UTC:* K obviously not if u have time to post on social media and stuff but whatever nevermind I understand. Go do whatever u need to do. Ill just talk to u later 😊😊

>  **MV-1** May 6, 2021, 01:39:20 UTC: Okay sounds good and I just had to start cooking dinner for the whole family

> **HICKS** *May 6, 2021, 01:40:01 UTC:* K and good to know I didnt matter but whatever Ttyl im not looking to argue.

> **HICKS** *May 6, 2021, 02:57:30 UTC:* Oh ok and nothing is wrong now i mean i did wanna cut and kill myself but im over that now but not like u helped any

>  **MV-1** May 6, 2021, 03:07:04 UTC: People saying I am ugly and other things

> **HICKS** *May 6, 2021, 03:07:35 UTC:* Like? And other things like? And why?

>  **MV-1** May 6, 2021, 03:08:05 UTC: Like I should not live and I am ugly and I am not good enough

> **HICKS** *May 6, 2021, 03:09:11 UTC:* Ok but people like who? And why? And ok

>  **MV-1** May 6, 2021, 03:09:28 UTC: Some random people

> **HICKS** *May 6, 2021, 03:12:32 UTC:* Ok well then smarten up and just block them

12

if on social media and ignore them BC u an I are the only ones who matter. Idk y they say this to u BC u haven t told me y. But unless ur gonna start talking more and telling me everything more and not hide shit from me then we can figure it out together. I mean me asking the same questions three times is getting annoying. I mean I do love u I really do but u gotta be getting better.

*MV-1* May 6, 2021, 03:13:25 UTC: Okay and I tell you everything

*HICKS May 6, 2021, 03:14:01 UTC:* I hope u do i really do but im serious tho

*MV-1* May 6, 2021, 03:14:09 UTC: I know

*HICKS May 6, 2021, 03:15:05 UTC:* Good, can I get the pictures now tho?

*MV-1* May 6, 2021, 03:15:29 UTC:  Of boobs or what

*HICKS May 6, 2021, 03:16:12 UTC:* Ya of Boobs and maybe few other places to

*HICKS May 6, 2021, 03:16:17 UTC:* If that's ok

*MV-1* May 6, 2021, 03:16:59 UTC:
Removed by Sender May 6, 2021, 03:17:59 UTC: wifee unsent a message

*HICKS May 6, 2021, 03:17:54 UTC:* Ok send some more please

*MV-1* May 6, 2021, 03:18:32 UTC:
Removed by Sender May 6, 2021, 03:19:17 UTC: wifee unsent a message

*MV-1* May 6, 2021, 03:18:41 UTC:
Removed by Sender May 6, 2021, 03:19:19 UTC: wifee unsent a message

*HICKS May 6, 2021, 03:19:22 UTC:* Amazing 😍 

*HICKS May 6, 2021, 03:19:38 UTC:* Love to see more of u t

*MV-1* May 6, 2021, 03:19:57 UTC:   Yeah I know

*HICKS May 6, 2021, 03:20:11 UTC:* So can I see more of u?

*MV-1* May 6, 2021, 03:20:18 UTC: No sorry

*HICKS May 6, 2021, 03:21:13 UTC:* Well I said I wanted to so u should because u did ask Boobs or what and I said I wanted to see all of u

13

*MV-1* May 6, 2021, 03:22:13 UTC:
    I don't want to

**HICKS** *May 6, 2021, 03:22:35 UTC:* Please?? 😊

*MV-1* May 6, 2021, 03:23:01 UTC: I don't want to

**HICKS** *May 6, 2021, 03:23:25 UTC:* Please ??

*MV-1* May 6, 2021, 03:23:43 UTC: I don't want to

**HICKS** *May 6, 2021, 03:24:15 UTC:* Well u have to BC u said u would but ok whatever good to know it was another lie

*MV-1* May 6, 2021, 03:24:51 UTC: Give me a second I think he is here

**HICKS** *May 6, 2021, 03:25:15 UTC:* Idk who he is but k

*MV-1* May 6, 2021, 03:25:36 UTC: My brother hold on

*MV-1* May 6, 2021, 03:27:59 UTC: Yeah he not here but if he was I was going to have to call the cops

**HICKS** *May 6, 2021, 03:28:14 UTC:* That's good

**HICKS** *May 6, 2021, 03:28:48 UTC:* Ya so can I see the rest now?

The following summary describes the videos shared by (and then removed by) MV-1 and received by HICKS during their chat:

*****24: is an approximately 4 second video depicting MV-1 lying fully nude on a white/off-white mattress, her shoulders are resting against a white/off-white pillow, her legs are separated so that her vulva, breasts, and majority of her face are visible. This video meets the federal definition of child pornography.

*****84: is an approximately 4 second video depicting MV-1 fully nude, standing in a bathtub, her vulva and breasts are visible, water can be heard running in the background, and she is blowing a kiss towards the camera. This video meets the federal definition of child pornography.

*****85: is an approximately 4 second video depicting MV-1 standing up and facing a full-length mirror, a cellular phone in a blue case is in her hand, she is wearing a black sweater or jacket is open and pushed back off her shoulders exposing her breasts, a pair

of multi-colored shorts are pulled down to her knees exposing her vulva. This video meets the federal definition of child pornography.

SA Gill confirmed that MV-1 sent and Defendant Hicks received CP on May 8, 2021, June 7, 2021, and June 8, 2021.

**Minor Victim 1** (Residing in the Southern District of Texas)

On or about July 29, 2021, Harris County Sheriff's Office Det. Peterson traveled to a residence in the Southern District of Texas in reference to Cyber Tipline Report #92806182. Det. Peterson met with the parents of a female 13-years of age, later identified as Minor Victim 1 (MV-1). With the parents of MV-1 in the room and with their permission, Det. Peterson spoke to MV-1 about the information contained in the cyber tip.

MV-1 confirmed she did know someone online named "Daniel" and indicated to Det. Peterson that she had previously communicated with him (HICKS) via Facebook messenger. MV-1 stated she told HICKS to go away, to which he responded that he was going to kill himself. When she had not heard from HICKS, she became frightened that he had taken his own life. MV-1's mother explained to Det. Peterson that MV-1's friend had recently committed suicide. MV-1 acknowledged HICKS had attempted to solicit nude images of her during their online conversations but denied sending any. Det. Peterson presented MVF-1 with an image of HICKS from his Facebook account. MV-1 identified the person in the image as "Daniel." MV-1 explained to Det. Peterson that the conversations between herself and HICKS were on Facebook Messenger and when his account was shut down the conversations were deleted.

On January 11, 2023, SA Gill and Det. Peterson spoke with MV-1's parents and told them there was new evidence related to the investigation of HICKS. MV-1's parents consented to bring MV-1 to a forensic interview. During that interview, MV-1 provided the following information:

MV-1 described being contacted randomly by HICKS via Facebook Messenger when she was 13 years old. She accepted his message request believing he might be a family member. According to MV-1, HICKS sent her a lot of messages and the relationship between the two escalated quickly. MV-1 recalled HICKS sent her unsolicited nude images of himself and often requested she send him nude images. MV-1 believed she was forced to send HICKS nude images after he threatened to kill or hurt himself, because she did not want to be responsible for HICKS taking his own life. The nude pictures began before HICKS told her he wanted to marry her. MVF-1 was shown the nine images by FIS Krietz and identified herself, her deceased friend, HICKS, and images that she sent to HICKS that meet the federal definition of child pornography to include *****_o.jpg. MV-1 advised HICKS attempted to contact her via Snapchat and Instagram after she blocked him on Facebook, she noted he had started following some friends of hers on Instagram and had begun sending messages to one of her friend's trying to reconnect. She kept the screenshots from the messages HICKS sent to her friend trying to reconnect with her. She contacted HICKS one time after seeing the messages to her friend and told him to leave them all alone.

On March 21, 2023, SA Gill obtained a federal search warrant in the United States District Court, District of Vermont, for 2193 Route 109, Waterville, Vermont. On March 22, 2023, SA Gill, along with other members of the Vermont ICAC, executed the federal search warrant at the aforementioned address.

HICKS was asked if he would be willing to talk with SA Hurst and SA Gill outside in the truck and he agreed. SA Gill advised HICKS he was not under arrest, he was free to leave at any time, and read his Miranda warnings as he read along. HICKS stated he understood his Miranda rights and attested he was willing to answer questions.

HICKS confessed to utilizing Facebook, Instagram, and Snapchat to chat with minor females and affirmed that he solicited sexually explicit images from them that he would save to his Android cellphone. HICKS admitted to utilizing an Android A13 cellphone and a HP all-in-one desktop computer while soliciting the illicit images and videos.

SA Gill told HICKS that she lived near Houston and mentioned the city where MV-1 lived. HICKS declared he had heard of the same city and that he previously had a friend from there.

HICKS provided the first name of MV-1. HICKS stated the two met via social media after he sent her a message telling her he thought her profile picture looked cool. According to HICKS, they stopped talking because MV-1 started calling him a pedophile and questioning why he wanted to talk to her. HICKS initially claimed they were not that far apart in age. HICKS guessed MV-1 was 16 or 17 and he believed he was either 20 or 21. According to HICKS, he and MV-1 were not friends online for very long because he did not want to put up with her drama. HICKS described the drama as MV-1 being depressed, having poor health due to not eating, getting hospitalized due to not eating, and having attempted to overdose on her depression medication.

HICKS admitted he created a Facebook account and almost immediately began soliciting nude images from minor females he friended through the application. HICKS agreed he had known MV-1 was 14-years of age and that he had solicited nude images of her via the Facebook Messenger application.

HICKS guessed there would be a total of 5 or 6 other minor victims images/videos found on his Android cellphone during a forensic examination.

**Minor Victim 2** (Uncharged, Residing within the Southern District of Indiana)

While interviewing HICKS, he provided the first and last name of Minor Victim 2 (MV-2), her age (15), partial address, and admitted to the solicitation, receipt, and possession of child pornography images related to MV-2. SA Gill searched Instagram for MV-2 and showed HICKS the list of potential accounts potentially related to MV-2. HICKS identified one such account that utilized the first and last name of MV-2 and had the image of a minor female.

During a subsequent review of the forensic evidence, SA Gill observed a folder bearing the name of MV-2 and noted the folder contained images and videos consistent with the Instagram

17

account image identified by HICKS as belonging to MV-2. On October 3, 2023, while reviewing

the Snapchat return for "vtcountry20", SA Gill located numerous chats beginning December 11,

2022 through January 4, 2023 between MV-2 and HICKS, as well as numerous images and videos.

Two of the files depicting MV-2 are described as follows:

> Snapchat-640161849: An approximately 3-second video of MV-2 lying atop a bed nude
> from the waist down with her legs separated while manually stimulating herself. This video
> meets the federal definition of child pornography.

> Screenshot_20221129-021318_Snapchat: An image depicting MV-2 lying atop a bed nude
> from the waist down with her legs separated with her vagina as the focus of the image. This
> image meets the federal definition of child pornography.

From the investigative information developed, HSI Houston was able to determine a

location for MV-2 in the Southern District of Indiana, along with prospective parent names, parents

address and business location. HSI SA Robby Foster met with the parents of MV-2 and presented

non-CSAM images of MV-2 to the parents. The parents positively identified MV-2 as the child

depicted in the images and confirmed that MV-2 resided within the Southern District of Indiana

during the commission of the offenses.

**Minor Victim 3** (Residing within the Middle District of Florida)

On December 29, 2022, a Lake County resident, contacted the Mascotte Police Department

regarding his daughter's twelve-year-old friend, Minor Victim 3 (hereafter MV-3), engaging in

sexually explicit conversations with adult males on the internet. On January 9, 2023, MV-3 was

interviewed, and she advised that she had been receiving and sending nude photographs to adult

men through Snapchat. MV-3's father gave MV-3's phone to the officers to review it for child

pornography. MV-3's phone was searched, and law enforcement executed a search warrant on her

Snapchat account. On her Snapchat account, there was a conversation between MV-3 and HICKS,

who was utilizing the screenname "vtcountry20." On December 23, 2022, MV-3 told HICKS that she was 15 years old. HICKS asked MV-3 to send nude images of her body through Snapchat. HICKS also sent MV-3 an image of what appears to be an adult male's penis. MV-3 sent HICKS the requested child pornography on or about December 23, 2022.

HICK's devices were forensically examined, and multiple images of child pornography were found on it. There were three images related to MV-3 containing child pornography in HICK's cellphone. On June 28, 2023, a forensic child interview of MV-3 was conducted. She was shown the following three images containing child pornography that were found on HICK's phone. She identified herself in the images and advised that she sent the images to Snapchat users:

1. Title: Screenshot_20221223-130218_Snapchat.jpg
   Description: Color photo which appears to be a screenshot as the top of the photo contains device information such as time, battery indicator, as well as cellular and wifi signal indicators. The bottom of the photo has a text bar that states, "Reply to [MV-3]…" The photo is of a close view of a vagina, which is the focal point of the photo. There appears to be some clothing, white and pink stripes, just above the vagina. This image meets the federal definition of child pornography.

2. Title: Screenshot_20221223-135815_Snapchat.jpg
   Description: Color photo which appears to be a screenshot as the top of the photo contains device information such as time, battery indicator, as well as cellular and wifi signal indicators. The bottom of the photo has a text bar that states, "Reply to [MV-3]…". The photo is of a close view of a vagina, which is the focal point of the photo. This image meets the federal definition of child pornography.

3. Title: Screenshot_20221223-141021_Snapchat.jpg
   Description: Color photo which appears to be a screenshot as the top of the photo contains device information such as time, battery indicator, as well as cellular and wifi signal indicators. The bottom of the photo has a text bar that states, "Reply to [MV-3]…" The photo is of a close view of a vagina, which is the focal point of the photo. This image meets the federal definition of child pornography.

The following items were seized during the execution of the search warrant:

1. Android A13 Cellphone, Model Number SMA136U
2. HP All-In-One Monitor/Desktop computer, Serial Number 8CC0380F2k

3. HP Chromebook, Serial Number 5CD11131G7
4. Samsung Tablet (Neither the model number nor the serial number are known at this time)
5. Pandigital Tablet, Serial Number 7013010511101812
6. SanDisk Micro SD Card
7. Verbatim 64GB SD Card
8. SanDisk 8GB Micro SD Card
9. USB Bracelet
10. JVC Camcorder, Serial Number GZ-MS100RU
11. Jazz Video Recorder (Neither the model number nor the serial number are known at this time)
12. Black LG Cellphones (Neither the model number nor the serial number are known at this time)
13. Blue Cellphone (Neither the model number nor the serial number are known at this time)
14. TCL Cellphone
15. Blue Cellphone
16. Motorola Cellphone, IMEI# 353776481570206

The digital devices utilized by the Defendant in the commission of the offenses were manufactured outside of the state of Texas. Consequently, the media at issue which was used to produce, receive and possess child pornography traveled in foreign or interstate commerce. The Defendant used MV1, MV2 and MV3 to engage in sexually explicit conduct for the purpose of creating a visual depiction of that conduct. Further, the Defendant utilized the Internet, which is a means and facility of interstate commerce, to produce and receive MV1, MV2 and MV3's images.

**Breach of Plea Agreement**

18. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and

reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Monetary Penalties, Assets and Financial Disclosures

19.  Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

20.  Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 9 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

## Restitution

21.  Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss in an amount to be determined either before sentencing or within 90 days of the sentencing hearing.  Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s) pursuant to Title 18, United States Code, Section 2259(b)(2).  Defendant understands that the amount is to be no less than $3,000.00 per victim.  Defendant agrees to pay full restitution as determined by the Court, regardless of the resulting loss amount, to all victims harmed by Defendant's "relevant conduct," as defined by

U.S.S.G. §1B1.3, including conduct pertaining to any dismissed counts or uncharged conduct, and regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that should the Court impose a payment schedule, the payment schedule sets forth minimum payments and does not foreclose additional collection of restitution.

### Forfeiture

22.  As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation [including but not limited to the following specific assets:];

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c) that Defendant obtained an unknown amount from the criminal offenses, that the factual basis for the guilty plea supports the imposition of a money judgment in that amount, and that the Defendant agrees to the imposition of a money judgment in that amount [or, if not agreed, that the Court will determine the proper amount of a money judgment];

(d) that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

### Financial Statement

23.  Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and

anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

24. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

## Notification of the Sex Offender Registration and Notification Act

25. Defendant has been advised, and understands, that under the Sex Offender Registration and Notification Act, a federal law, he must register and keep the registration current in each of the following jurisdictions: where he resides; where he is an employee; and where he is a student. The Defendant understands that the requirements for registration include providing his name, his residence address and the names and addresses of any places where he is or will be an employee or a student, among other information. The Defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three (3) business days after any change of residence, employment, or student status. Defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for failure to register under federal law, 18 U.S.C. §2250, which is punishable by a fine or imprisonment, or both.

**Complete Agreement**

26.  This written plea agreement, consisting of 25 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

27.  Any modification of this plea agreement must be in writing and signed by all parties.

Filed at __Houston__, Texas, on __April 16, 2025__, 20__.

_____
Defendant

Subscribed and sworn to before me on __April 16, 2025__, 20__.

NATHAN KYLE OCHSNER
UNITED STATES DISTRICT CLERK

By: __/s/ Carol Felchak__
Deputy United States District Clerk

APPROVED:

Nicholas J. Ganjei
United States Attorney

By: _____
Luis Batarse
Assistant United States Attorney
Southern District of Texas

_____
Natalie Awad
Attorney for Defendant

24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | § | | |
| | § | | |
| v. | § | CRIMINAL NOS. | 4:23-CR-183 & |
| | § | | 4:25-CR-139 |
| DANIEL LEE HICKS | § | | |
| Defendant. | § | | |

### PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment/information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     _____4/16/25_____
Natalie Awad                                          Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the indictment/information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____     _____4/16/25_____
Daniel Lee Hicks                                    Date
Defendant

25